# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00284-CV

**Troy Arn, Appellant**

**v.**

**Sydney Tye Stuart, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-08-001787, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a collision between vehicles driven by appellant Troy Arn and appellee Sydney Stuart, Arn sued Stuart for negligence, negligence per se, and gross negligence. At the conclusion of the jury trial, the jury found that the accident had not been proximately caused by any negligence attributable to Stuart, and the trial court entered judgment in favor of Stuart. Arn appeals, arguing that the evidence is legally and factually insufficient to support the jury's verdict and that the jury applied the wrong legal standard in making its finding. We affirm the judgment of the trial court.

## BACKGROUND

On the evening of Thursday, November 30, 2006, Arn was driving near downtown Austin. Arn turned onto an on-ramp leading to an access road to the MoPac Expressway. Two yield signs are placed at the point where the on-ramp and the access road merge. Before reaching the yield

signs, Arn testified that he slowed almost to a stop, doing so to avoid oncoming traffic. When asked if he came to a complete stop, Arn replied, "I was slowly—my car was in slow motion. You know, I was probably going maybe about five miles an hour by the time the [oncoming] car was going to pass me." After he slowed down, Arn stated that he heard "screeching" behind him that sounded like a car. Arn turned around and watched as Stuart's vehicle collided with the rear end of his car. Arn testified that the accident occurred before his car had reached the yield signs marking the entrance to the access road.

Stuart testified that, before the accident, she had been traveling at 25 to 30 miles per hour, at a distance of between two and three car lengths behind Arn's vehicle. Traffic was light. As she approached the yield signs at the point where the on-ramp and the access road merge, she looked over her left shoulder to check for oncoming traffic. She testified that before she looked over her shoulder, Arn's vehicle had been moving with the flow of traffic and that his brake lights had not been illuminated. Stuart testified that she did not see any oncoming traffic that would require slowing down in order to merge onto the access road. By the time she looked back to the roadway in front of her, Arn's vehicle had come to a complete stop. Stuart applied her brakes, and while she was almost able to avoid the accident, her car collided with the rear end of Arn's car.[1]

Arn and Stuart pulled over to the side of the road, and Arn called the Austin Police Department. Arn testified that, as he was speaking to Stuart, he noticed the smell of alcohol. Arn also testified, however, that Stuart was not slurring her words or otherwise acting in a manner out

---

[1] Stuart also testified that the night was rainy and the roads were slick. Arn, however, testified that the night was cold and dry. Arn's father, who arrived at the scene after the accident, stated that it started raining only after he arrived.

2

of the ordinary. Stuart testified that she had consumed approximately two glasses of wine during a two-to-three hour business meeting that ended shortly before the accident. She testified that she was not impaired due to alcohol at the time of the accident. Stuart further testified that after Officer Rick Davis of the Austin Police Department arrived at the accident scene, he spoke to her about her alcohol consumption and performed the horizontal gaze nystagmus test on her.[2] Officer Davis testified that, while he did not specifically recall the investigation, his report indicated that he had found no evidence that Stuart was intoxicated.

After both sides rested at trial, Stuart sought an instruction in the jury charge regarding Arn's contributory negligence, arguing that the evidence showed that Arn had acted negligently in coming to a "sudden stop" before reaching the yield signs. The trial court denied the request, indicating that the evidence did not support a finding that Arn had been contributorily negligent.

During jury deliberations, the jury foreperson sent a note to the trial court stating, "We would like to see the testimony/deposition of Troy Arn of where exactly he feels he stopped. Was it before, at or after the yield sign[s]?" After the trial court sent a note back asking for clarification of the point in dispute, the foreperson responded, "We disagree on where Troy stopped, and some people feel that if he stopped or slowed down before the yield sign[s], it makes it more clear." Arn's testimony regarding his actions as he approached the yield signs, in which he stated that he had slowed down to a speed of roughly five miles per hour before reaching the signs, was

---

[2] The horizontal gaze nystagmus test is a field sobriety test that examines a suspect's eyes for equal tracking and pupil size.

then read to the jury. At the close of deliberations, the jury found in favor of Stuart, and this appeal followed.

**STANDARD OF REVIEW**

When reviewing a legal sufficiency finding, we examine the record for evidence supporting the finding that reasonable jurors could believe, disregarding all contrary evidence that reasonable jurors could ignore. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If no evidence supports the finding on an issue on which the appellant bore the burden of proof, we review the record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If the proposition contrary to the verdict is established as a matter of law, we must render judgment for that proposition. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not substitute our judgment for that of the fact-finder. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

4

**DISCUSSION**

*Evidentiary Sufficiency*

In his first and second issues on appeal, Arn challenges the legal and factual sufficiency of the jury's finding that Stuart's negligence did not proximately cause the collision. The jury charge reads, "Did the negligence, if any, of Sydney Tye Stuart proximately cause the collision in question?" The jury answered, "No." On appeal, the parties join issue only on whether Stuart was negligent. The charge included the following definitions:

> "NEGLIGENCE" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

> "ORDINARY CARE" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

We evaluate the evidence presented at trial in light of these definitions. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000).

Texas courts have consistently held that the mere occurrence of a rear-end automobile accident is not of itself evidence of negligence. *Pearson v. DeBoer, Inc.*, 99 S.W.3d 273, 276 (Tex. App.—Corpus Christi 2003, no pet.) (citing, inter alia, *Vandyke v. Austin Indep. Sch. Dist.*, 547 S.W.2d 354, 357 (Tex. Civ. App.—Austin 1977, writ denied)). The plaintiff must prove specific acts of negligence on the part of the following driver in addition to proving proximate cause. *Id.* (citing *Neese v. Dietz*, 845 S.W.2d 311, 314 (Tex. App.—Houston [1st Dist.] 1992, writ denied)).

"In cases of this character, standards of ordinary care cannot be fixed with any degree of certainty, but must be left in large measure to the trier of the facts." *Neese*, 845 S.W.2d at 314

5

(discussing rear-end vehicular collisions); *see Williamson County v. Voss*, 284 S.W.3d 897, 902 (Tex. App.—Austin 2009, no pet.). The issue of whether a rear-end collision raises an issue of negligence or establishes it as a matter of law depends on all the facts and circumstances of the particular case. *Pearson*, 99 S.W.3d at 276. Whether the plaintiff succeeds in proving negligence by a preponderance of the evidence is within the jury's province to determine. *Id.*

In our analysis of the legal sufficiency of the evidence, we first examine the record for evidence supporting the finding that reasonable jurors could believe, disregarding all contrary evidence that reasonable jurors could ignore. *City of Keller*, 168 S.W.3d at 807. In this case, Stuart testified that she was driving between 25 and 30 miles per hour and was between two and three car lengths behind Arn's vehicle immediately prior to the accident. Before the accident occurred, she had seen Arn's vehicle moving towards the merger with the access road, and she had noted that his brake lights had not been illuminated. Upon approaching the yield signs marking the merger with the access road, she looked over her shoulder to check for oncoming traffic. She did not see any traffic that would have required Arn to slow down to merge onto the access road. When she looked back at the road in front of her, she saw that Arn's car had come to a complete stop. Though she then applied her brakes, she could not stop fast enough to avoid colliding with Arn. She also testified that she was not impaired due to alcohol consumption at the time of the accident. This testimony provides some evidence that Stuart acted with ordinary prudence, and consequently constitutes legally sufficient evidence to support the jury's finding that Stuart was not negligent. *See Stone v. Sulak*, 994 S.W.2d 348, 349 (Tex. App.—Austin 1999, no pet.) (affirming legal sufficiency of no-negligence finding where testimony showed that driver looked over shoulder to gauge oncoming traffic, then collided with vehicle that had stopped at yield sign).

Arn, however, argues that the evidence is legally insufficient because, in finding that Stuart was not negligent, the jury improperly relied on evidence that Arn himself was negligent in slowing down as he approached the yield signs.[3] According to Arn, the jury was barred from considering evidence of Arn's own negligence, as the trial court's refusal to instruct the jury on contributory negligence established that he had not been negligent as a matter of law. Stuart's testimony, however, supports the finding that she acted with ordinary prudence without implicating any negligent behavior by Arn. Further, it was within the province of the jury to consider Arn's actions in evaluating the circumstances surrounding the accident. *See Pearson*, 99 S.W.3d at 276 (holding that in cases involving rear-end collisions, jury is to consider facts and circumstances of case to determine whether defendant acted with negligence); *Neese*, 845 S.W.2d at 314 (explaining that in cases involving rear-end collisions, evaluation of standard of care depends on case-specific facts and "must be left in large measure to the trier of the facts"). Here, Arn's proximity to the yield signs and the speed at which his car was moving at the time of the accident are among the facts that the jury may consider in determining whether Stuart acted negligently under the circumstances. Accordingly, Arn's challenge to the legal sufficiency of the evidence fails, and his first issue on appeal is overruled.

We turn to factual sufficiency analysis, under which we consider and weigh all of the evidence, setting aside the verdict only if the evidence is so weak or if the finding is so against the

---

[3] In asserting that the jury impermissibly considered his negligence, Arn relies on the fact that, during deliberations, the jury sent a note asking for clarification regarding his actions as he approached the yield signs. The jury note in question states, "We disagree on where Troy stopped, and some people feel that if he stopped or slowed down before the yield sign[s], it makes it more clear."

great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Here, while Arn testified that he heard "screeching" from a car behind him and turned to see Stuart's car collide with his, this testimony does not conclusively indicate that Stuart was acting negligently at the time. *Pearson*, 99 S.W.3d at 276 (holding that mere occurrence of accident is not itself conclusive evidence of negligence). Further, while Arn testified that he smelled alcohol when speaking to Stuart, he admitted that she was not slurring her words or otherwise exhibiting unusual behavior, and Officer Davis testified that his report showed no evidence that Stuart was intoxicated. In light of our analysis of Stuart's testimony above, we conclude that the jury's finding is not against the great weight and preponderance of the evidence and that the evidence is factually sufficient to support the verdict.[4] Arn's second issue on appeal is overruled.

### Application of Incorrect Legal Standard

In his third issue on appeal, Arn argues that the jury applied an incorrect legal standard by considering his negligence during deliberations. As above, Arn asserts that the jury was barred from considering his negligence because the trial court had denied the defense a contributory negligence instruction in the charge. Arn then argues that the jury "strayed beyond the boundaries of the jury charge" by considering his negligence, as evidenced by the jury note reflecting a

---

[4] Arn also argues that a "driver who rear-ends another driver commits negligence essentially as a matter of law," and therefore the jury's finding is against the great weight and preponderance of the evidence. In making this argument, Arn relies on section 545.062 of the transportation code, which requires a driver following another driver to maintain "an assured clear distance between the two vehicles." *See* Tex. Transp. Code Ann. § 545.062 (West 1999). However, "a breach of this section of the transportation code does not create per se negligence, but instead creates the same duty of reasonable care as under the common law." *Pearson v. DeBoer, Inc.*, 99 S.W.3d 273, 276 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Louisiana-Pacific Corp. v. Knighten*, 976 S.W.2d 674, 675 (Tex. 1998) (per curiam)).

disagreement about whether Arn slowed down or stopped as he approached the yield signs. As explained above, however, the trial court's refusal to include an instruction about Arn's contributory negligence does not preclude the jury from considering Arn's actions when evaluating the circumstances of the accident. *Cf. id.*; *Neese*, 845 S.W.2d at 314. Accordingly, we disagree that the jury note indicates that the jury applied an incorrect legal standard.

Arn also argues that the "only conceivable situation in which a reasonable jury, based on the evidence, could conclude that Ms. Stuart's actions did not rise to the level of negligence would be if it was Mr. Arn's negligence that caused the accident." Our review of the record, however, indicates that the jury had sufficient evidence to conclude that Stuart was not negligent even in the absence of a corollary finding that Arn was negligent. Further, the jury was not required to find one party or the other negligent. Negligence does not arise simply because an accident occurred, and the jury was free to conclude that neither party was negligent. *See Stone*, 994 S.W.2d at 349 (noting that, in case involving rear-end collision at yield sign, jury failed to find that either party's negligence caused accident).[5] Based on this analysis, Arn's third issue on appeal is overruled.

---

[5] In addition, the primary authority that Arn relies upon in making this argument is inapplicable to the facts of this case. Arn cites to *Graham v. Tyler County*, 983 S.W.2d 882 (Tex. App.—Beaumont 1998, pet. denied), for the proposition that this Court may order a new trial in cases where the jury applies an incorrect legal standard. In *Graham*, the appellate court ordered a new trial on the basis that the trial court had incorrectly instructed the jury in the charge, thus leading to the application of an incorrect legal standard. *See id.* at 883. No such error in the jury charge is before us here.

## CONCLUSION

We affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   November 5, 2010